UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RICHARD GUERTIN,

                        Plaintiff,

-against-

UNITED STATES OF AMERICA, DEPARTMENT
OF HOUSING AND URBAN DEVELOPMENT,

                        Defendant.
-------------------------------------------------------------X

ECF CASE

COMPLAINT

JUDGE KARAS

Plaintiff, RICHARD GUERTIN, by his attorney ROBERT N. ISSEKS, complaining of the defendant, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, alleges as follows:

**Parties**

1. At all times hereinafter mentioned plaintiff, Richard Guertin was and remains a resident of the County of Orange, State of New York.

2. Defendant, United States of America, Department of Housing and Urban Development ("HUD") is an agency of the United States being sued pursuant to 5 U.S.C. §703.

**Nature of Action and Jurisdiction**

3. This is a civil action brought pursuant to the Administrative Procedure Act seeking judicial review of a final determination made by HUD which has deprived, and continues to deprive, plaintiff of rights secured under the Fourteenth Amendment to the Constitution of the United States.

4. Jurisdiction is conferred on this Court by 5 U.S.C. §704 and 28 USC §§1331, 1343 and 1361.

## Statement of Claims

5. Plaintiff, Joseph DeStefano and Neal Novesky were named as co-defendants in Orange County, New York Indictment No. 2004-655 (Exhibit A). That indictment contained charges of defrauding the government (N.Y.S. Penal Law §195.20); tampering with public records in the first degree (9 counts) (N.Y.S. Penal Law §175.25); falsifying business records in the first degree (11 counts) (N.Y.S. Penal Law §175.10); offering a false instrument for filing in the first degree (13 counts) (N.Y.S. Penal Law §175.35); issuing a false certificate (2 counts) (N.Y.S. Penal Law §175.40); official misconduct (6 counts) (N.Y.S. Penal Law §195.00); engaging in a prohibitive conflict of interest (5 counts) (N.Y.S. General Municipal Law §§801 & 805); attempted engaging in a prohibitive conflict of interest (N.Y.S. Penal Law §110.00 & General Municipal Law §§801 & 805); and conspiracy in the fifth degree (N.Y.S. Penal Law §105.05). Plaintiff was charged with some, but not all, of these counts.

6. The above counts arose out of seven loans made by HUD to various entities through the City of Middletown's Office of Economic and Community Development ("OECD"). It was the prosecution's theory that plaintiff, while he was Middletown's Corporation Counsel, conspired with DeStefano, then Middletown's Mayor, and Novesky, the OED's Director, to defraud HUD and the City by concealing DeStefano's alleged interests in the seven HUD loans.

7. After a bench trial before the County Court, County of Orange held on March 7-25, 2005, plaintiff and his two co-defendants were found not guilty of all of the charges contained in the indictment. The trial court specifically found that the People failed to present "any credible evidence of fraud in connection with the issuance of [the seven HUD] loans." While plaintiff and Novesky were acquitted of all of the charges made against them, the trial court found DeStefano guilty of two *sua sponte* reduced counts of offering a false instrument for filing in the second degree (N.Y.S. Penal Law §175.30), the Supreme Court of the State of New York, Appellate Division, Second Department, reversed DeStefano's conviction and dismissed the indictment, holding that, "the evidence was legally insufficient to establish his guilt beyond a reasonable doubt of offering a false instrument for filing[.]" *People v. DeStefano*, 2007 WL 4246299, *1 (2nd. Dept. 2007)

8. Plaintiff had to retain counsel to defend him against the criminal prosecution and did retain John Ingrassia, Esq., of Larkin, Axelrod, Ingrassia & Tetenbaum, LLP, Newburgh, New York as his defense attorney and incurred fees in the sum of $65,967.76 for legal services and other costs associated with the criminal defense.

9. In a letter dated September 7, 2007 (Exhibit B), Elton J. Lester, then Acting Associate General Counsel of HUD's Office of Assisted Housing and Community Development, responded, on behalf of HUD, to a request made by Otto J. Hetzel, Esq. for advice on the eligibility, under the Community Development Block Grant (CDGB)

program, of legal expenses incurred by plaintiff's co-defendant, Novesky, in his, Novesky's, defense of the criminal charges.

10. By Lester's September 7, 2007 letter, HUD authorized the City of Middletown to reimburse Novesky, out of the City's HUD administrative funds, for the expenses that Novesky incurred in his defense of the criminal charges. Lester's letter stated, in pertinent part:

> Section 105(a)(13) of the Housing and Community Development Act of 1974 authorizes CDBG funds to be used for "the payment of reasonable administrative costs and carrying charges related to the planning and execution of community and housing activities." *See also* 24 CFR § 570.206. The CDBG regulation at 24 CFR § 570.200(a)(5) further subjects administrative costs to OMB Circular A-87, "Cost Principles for State, Local, and Indian Tribal Governments" (May 10, 2004). Under the Circular, Attachment B, section 10.b, *Defense and prosecution of criminal and civil proceedings, and claims* provides "[l]egal expenses required in the administration of [f]ederal programs are allowable."
>
> As a general matter, CPD has taken the position that a recipient may use CDBG funds to pay reasonable legal expenses incurred in defense of lawsuits resulting from its administration of the CDBG program as long as the grantee has acted with due diligence in the administration of the program. In this case, we note that the proceedings resulted from actions undertaken in the ordinary course of the Director's employment and the court acquitted him of all charges after a trial on the merits. Further, no CDBG funds financed the employee's defense during the proceedings. Under these circumstances, we believe the legal expenses would be *required* in the administration of the CDBG program for purposes of section 10.b (emphasis added).

11. Pursuant to Lester's September 7, 2007 letter, the City of Middletown reimbursed Novesky, out of the City's HUD administrative funds, for Novesky's expenses in the defense of the criminal prosecution in the amount of $79,800.00. Copies of the City of Middletown's vouchers approving such reimbursement are attached together as Exhibit C.

12. By letter dated March 17, 2008 (Exhibit D), plaintiff, by his attorney, Robert N. Isseks, wrote to Lester asking for advice on the eligibility, under the Community Development Block Grant ("CDBG") program, of plaintiff's and DeStefano's legal expenses in connection with their respective defenses of the criminal charges. Quoting from Lester's letter of September 7, 2007 (Exhibit B), plaintiff's counsel's March 17, 2008 letter provided HUD with the following to show that plaintiff and DeStefano are (and were) identically situated with Novesky in all respects material and relevant:

A. The criminal allegations against plaintiff and DeStefano, as noted by Lester, involved the same "administration of Federal programs" (Exhibit B, at Page 1, ¶2) that gave rise to the criminal allegations against Novesky. All three co-defendants faced the same criminal allegations of "improperly using CDBG funds for economic development loans." (Exhibit B, at Page 1, ¶2) The economic development loans that formed the bases of the charges against plaintiff and DeStefano are the same loans upon which the charges against Novesky were based.

B. As specifically noted by Lester, the Orange County Court "expressly found that 'every single one' of the seven economic development loans questioned were properly granted and documented." (Exhibit B, at Page 1, ¶2) Accordingly, plaintiff and DeStefano, like Novesky, were found not guilty of all of the charges contained in the indictment. (Again, while DeStefano was found guilty of two *sua sponte* reduced misdemeanor counts, his conviction was reversed on appeal and the indictment against him was dismissed.)

C. Both plaintiff and DeStefano played integral roles in the administration of the subject HUD loans and thus, like Novesky, the "reasonable legal expenses" incurred by plaintiff and DeStefano were in the defense of criminal charges that "resulted from actions undertaken in the ordinary course of [their] employment". (Exhibit C, at Page 1, ¶4)

D. As Middletown's Corporation Counsel, plaintiff's typical duties regarding HUD loans included reviewing (and sometimes assisting in the preparation of) commitment letters from the City's Office of Economic and Community Development ("OECD"); obtaining and reviewing preliminary title insurance reports; obtaining and reviewing HUD documentation; obtaining the Mayor's and the OED Director's signatures on documents required by HUD; negotiating with HUD regarding documentation requirements; preparing legal opinion letters as required by HUD; preparing and reviewing promissory notes; preparing mortgages when the City was taking back a mortgage; preparing or reviewing collateral security agreements when the City was taking security against the borrowers' personal property; attending closings when requested by the OED Director; and taking enforcement action on delinquent loans when requested by the OED.

E. Like Novesky, "no CDBG funds financed [plaintiff's or DeStefano's] defense during the proceedings." (Exhibit C, at Page 2, ¶1)

13. By letter dated June 12, 2008 (Exhibit E), Lester responded to plaintiffs' counsel's March 17, 2008, letter, stating his "opinion that the legal expenses of Mr.

DeStefano and Mr. Guertin are not eligible under the CDBG program." (Exhibit E, at 3) Specifically, Lester addressed the activities and responsibilities of the Mayor and Corporation Counsel, as enumerated in plaintiff's counsel's March 17, 2008 letter, by stating:

> These activities, however, did not serve as the basis for the criminal proceedings brought against your clients. While the alleged misconduct leading to the court proceedings occurred during Mr. DeStefano's tenure as mayor, his actions were of a personal nature. More specifically, according to the court, "[f]or all intents and purposes and on an economic basis, this loan from the Office of Economic Development was for the benefit of defendant DeStefano and by his paying back the loan with checks on his business account, he was performing directly the terms of that contract." The court documents also indicated that, during this period, Mr. DeStefano collected rent from six tenants who received economic development loans under the city's CDBG program.
>
> Along similar lines, the court documents described Mr. Guertin's questioned activities as being undertaken for the mayor's personal benefit as opposed to providing legal services to carry out the city's CDBG program. The court presiding over the case stated "attorney Guertin did wear two hats. And in his zeal to represent his private client DeStefano, he was blinded to his obligation to the City of Middletown ... So[,] Mr. Guertin did his job as attorney for a private citizen, DeStefano." In our view, legal expenses arising from a mayor's private business dealings, as well as those arising from advising the mayor on such matters, are not required in the city's administration of the CDBG program.
>
> Even if Mr. DeStefano's business dealings were undertaken in his official capacity as mayor, the general provision concerning legal expenses must be read in concert with the more specific restrictions otherwise contained in the OMB Circular and the CDBG regulations. One such restriction can be found in Attachment B, section 19, *General government expenses*, which states in pertinent part, "[t]he general costs of government are unallowable (except as provided in Attachment B, section 43, *Travel costs*).... These include: (1) Salaries and expenses of the Office of the Governor of a State or the chief executive of a political subdivision ...." A mayor's legal expenses resulting from his official duties would constitute expenses of the chief executive of a political subdivision and, therefore, fall within OMB Circular A-87's proscription against general government expenses. General government expenses, with limited exceptions, are not eligible for CDBG funding. 24 CFR 570.207(a)(2). No exceptions appear

applicable to this situation.

(Exhibit E, at 2)

14. None of the reasons set forth in Lester's June 12, 2008, letter in support of his opinion addressed the fact that Novesky's legal expenses were found eligible and that, for the reasons stated in plaintiffs' counsel's March 17, 2008, letter, Novesky is, in all material and relevant respects, identically situated with plaintiff.

15. There is no rational basis in either law or fact for the opinion expressed in Lester's letter of June 12, 2008 that while Novesky's legal expenses were eligible for reimbursement under the CDBG program, plaintiff's legal expenses are not eligible. Such opinion is both arbitrary and capricious and in violation of plaintiff's rights to due process and equal protection of the law.

16. By letter dated August 21, 2008 (Exhibit F), plaintiff's counsel wrote to Nelson R. Bregon, General Deputy Assistant Secretary, Office of Community Planning and Development, seeking reconsideration of the opinion expressed in Lester's letter of June 12, 2008. The August 21, 2008 letter set forth all of the information and observations contained in plaintiff's counsel's March 17, 2008 letter and added that:

A. The County Court's dicta relied upon by Lester to disallow Plaintiff's and DeStefano's legal expenses (June 12, 2008, Lester Letter, Exhibit E, at 2) – concerning DeStefano's purported "private dealings" and plaintiff's "wear[ing] two hats" when he was "advising" DeStefano – do not alter the fact that both plaintiff and DeStefano were found not guilty of all the charges against them and that all of the charges

against them arose out of the same transactions that formed the bases of Novesky's charges. Plaintiff's counsel pointed out that Lester, himself, noted, when he decided to allow Novesky's legal expenses, that "the [c]ourt expressly found that 'every single one' of the seven economic development loans questioned were properly granted and documented." (September 7, 2007, Lester Letter, Exhibit B, at 1)

      B. Lester used a double standard as reflected in his application of Attachment B, section 19 (General government expenses) to DeStefano's legal expenses. *See*, June 12, 2008, Lester Letter, Exhibit E, at 2 ("A mayor's legal expenses resulting from his official duties . . . fall within OMB Circular A-87's proscription against general government expenses.") In Lester's September 7, 2007, letter to Hetzel (Exhibit B), he specifically found that Attachment B, section 10.b applied to Novesky's legal expenses. *See*, Exhibit D, at 1 ("Under the Circular, Attachment B, section 10.b, *Defense and prosecution of criminal and civil proceedings, and claims* provides '[l]egal expenses required in the administration of [f]ederal programs are allowable.'"). There is simply no reason for finding that section 10.b applies to Novesky's legal expenses but not to the legal expenses of DeStefano and plaintiff.

    17. On April 6, 2010, plaintiff's counsel, not having received a response from Bregon to his August 21, 2008 letter, wrote a letter to Middletown's Common Council (Exhibit G) wherein plaintiff's counsel explained his efforts to obtain HUD's authorization for the reimbursement of plaintiff's legal expenses, stated that he was considering litigation against HUD to resolve this issue and, "as a last effort toward an

amicable solution," requested "that the Common Council pass a resolution, as it did for Mr. Novesky, expressing the City's position, to be conveyed to HUD, that since Mr. Novesky's legal expenses were deemed eligible for CDBG reimbursement, justice and fairness require that the legal expenses of Mr. Guertin be deemed eligible, as well."

18. On April 26, 2010, Middletown's City Council adopted a resolution (Exhibit H) providing, *inter alia*, that

> (1) "the Common Council hereby determines that there is no rational basis in law or fact to reimburse Mr. Novesky, but not Mr. Guertin, for the criminal defense legal expenses incurred by both City employees in the same indictment and for administration of the same federal program,"

> (2) "the Common Council hereby requests that HUD reconsider its previous rejection of the request by Mr. Guertin and, upon such reconsideration, allow Mr. Guertin to be reimbursed through CDBG administrative funds for the legal expenses incurred in the defense of the indictment and in the procurement of such reimbursement" and

> (3) "the Assistant Corporation Counsel is hereby authorized to transmit this Resolution to appropriate HUD officials."

19. On May 27, 2010, Alex Smith, Middletown's Assistant Corporation Counsel, wrote a letter to Lester (Exhibit I) enclosing the above resolution and requesting a prompt response.

20. Also on May 27, 2010, plaintiff's counsel wrote a letter to Lester (Exhibit J), this time on behalf of plaintiff only, enclosing his April 6, 2010 letter to Middletown's Common Council as well as the City Council's April 26, 2010 resolution, and requesting that Lester reconsider his position on the issue of plaintiff's reimbursement.

21. On January 20, 2011, Smith again wrote to Lester (Exhibit K) stating that the

City had not received a response to Smith's letter of May 27, 2010, and that the City was "interpreting the lack of a response as a lack of objection to [the City's] request." Smith's letter further stated that "[t]he City will reimburse Mr. Guertin for the subject attorneys fees out of the administrative funds of the Community Development Office on February 11, 2011."

22. By letter dated February 9, 2011, from Yolanda Chavez, Deputy Assistant Secretary for Grant Programs (Exhibit L), HUD wrote the following to plaintiff's counsel:

> This will respond to your letter of May 27, 2010, regarding the use of Community Development Block Grant (CDBG) funds to pay legal fees for Middletown's former Corporation Counsel, Mr. Richard Guertin. HUD's initial decision regarding this matter, transmitted to you in a letter dated June 12, 2008, from Elton J. Lester, of HUD's Office of General Counsel, determined that reimbursement of Messrs. DeStefano's and Guertin's legal fees by the city of Middletown would not constitute an eligible use of the city's CDBG funds. In the intervening time, HUD has received further appeals from you and the city of Middletown. These letters have requested reconsideration of HUD's decision regarding the legal fees incurred by Mr. Guertin.
>
> As HUD explained in its July 10, 2009, letter to Representative Maurice Hinchey (copy enclosed), HUD has already considered the points made in your August 21, 2008, letter. Subsequent letters have presented no new facts in the case that were not already considered by HUD. With all due respect, HUD stands by the determination rendered in its June 12, 2008, and July 10, 2009, letters. The city of Middletown may not use CDBG funds to reimburse Mr. Guertin for legal expenses resulting from his defense of New York Indictment No. 2004-655.
>
> I am sorry that you and the city of Middletown are dissatisfied with HUD's decision in this matter; however, HUD considers this matter closed.

23. Also by letter dated February 9, 2011 (Exhibit M), Chavez advised Smith of the same information set forth in her February 9, 2011 letter to plaintiff's counsel.

24. HUD's refusal to authorize the City of Middletown to reimburse plaintiff's legal expenses out of the administrative funds of the City's Community Development Office, as finalized by HUD's letters of February 9, 2011, is arbitrary, capricious and without any rational basis and in violation of plaintiff's rights to due process and equal protection as guaranteed by the Fourteenth Amendment.

WHEREFORE, plaintiff asks this Court to:

    A. Issue an order adjudging and declaring that HUD's refusal to authorize the City of Middletown to use HUD funds being held by the City's Office of Community Development to reimburse plaintiff for the legal expenses plaintiff incurred in defending Orange County, New York Indictment No. 2004-655 is arbitrary, capricious and without any rational basis and in violation of plaintiff's rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution;

    B. Issue an order directing and enjoining HUD to authorize the City of Middletown to pay plaintiff the sum of $65,967.76, plus interest, out of the HUD administrative funds being held by the City's Office of Economic and Community Development as reimbursement of plaintiff's legal expenses incurred in defending Orange County, New York Indictment No. 2004-655;

    C. Award plaintiff the costs and disbursements of this action;

    D. Award plaintiff reasonable attorney fees; and

    E. Grant plaintiff such further and other relief as to this Court may seem just and proper.

Dated: ~~June~~ July 5, 2011

_____
ROBERT N. ISSEKS, ESQ. (RI 0241)
Attorney for Plaintiff
6 North Street
Middletown, New York 10940
(845) 344-4322

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RICHARD GUERTIN,                                            ECF CASE

                Plaintiff,                      VERIFICATION

    -against-

UNITED STATES OF AMERICA, DEPARTMENT
OF HOUSING AND URBAN DEVELOPMENT,

                Defendant.
------------------------------------------------------------------X

State of New York, County of Orange ss.:

    RICHARD GUERTIN, being duly sworn, deposes and says:

    That he is the plaintiff herein; that he has read the foregoing Complaint and knows the content thereof; that same is true upon his personal knowledge or upon information and belief.

                                            _/s/ Richard Guertin_
                                            RICHARD GUERTIN

Sworn to before me this

30th day of June, 2011

_/s/ Linda C. Vanderbeck_

LINDA C. VANDERBECK
Notary Public, State of New York
No. 01VA4953369
Qualified in Ulster County
Commission Expires July 25, 2013