UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

RICHARD GUERTIN

                Plaintiff,

    -against-

UNITED STATES OF AMERICA, DEPARTMENT
OF HOUSING AND URBAN DEVELOPMENT

                Defendant.

------------------------------------------------------------------X

**ECF CASE**

**11 Civ. 4661 (KMK)**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO F.R.C.P. RULE 56**

ROBERT N. ISSEKS, ESQ.
Attorney for Plaintiff
6 North Street
Middletown, New York 10940
(845) 344-4322

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………………….. ii

PRELIMINARY STATEMENT …………………………………………………….. 1

THE NATURE OF THE CLAIM …………………………………………………..... 1

ARGUMENT ………………………………………………………………………... 2

    Point 1
    HUD's determination is arbitrary and capricious ………………………………. 2

    Point 2
    HUD's determination violates Guertin's 5th Amendment Right to
    Equal Protection ……………………………………………………...……..… 8

CONCLUSION ……………………………………………………………………... 10

# **TABLE OF AUTHORITIES**

5 U.S.C. §706(2)(A) ............................................................................................. 2

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010) ............... 9, 10

*Assoko v. City of New York*, 539 F.Supp.2d 728 (E.D.N.Y.2008) ............................ 9

*Cablevision Systems Corp. v. F.C.C.*, 570 F.3d 83 (2d Cir. 2009) ............................ 2

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .................... 2

*DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir.2003) .............................................. 8

*Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008) ............................... 9

*Giordano v. City of New York*, 274 F.3d 740 (2d Cir.2001) ............................... 8, 9

*Hanes v. Zurick*, 578 F.3d 491 (7th Cir. 2009) ................................................ 10

*Morel v. Thomas*, 2003 WL 21488017 (S.D.N.Y. 2003) ................................... 8, 10

*Natural Res. Def. Council, Inc. v. FAA*, 564 F.3d 549 (2d Cir. 2009) ....................... 2

*Natural Resources Defense Council v. U.S. E.P.A.*,
658 F.3d 200 (2d Cir. 2011) ............................................................................ 2, 3

*Oleson v. Morgan*, No. 06–CV–959, 2009 WL 2045682, at *7
(N.D.N.Y. July 8, 2009) .................................................................................. 9

*Pappas v. Town Of Enfield*, 2010 WL 466009 (D.Conn.,2010) ............................ 8

*Skelly v. I.N.S.*, 168 F.3d 88 (2d Cir. 1999) ..................................................... 2

*Smith v. Defendant A*, L 1514590 (S.D.N.Y. 2009) ............................................ 2

*Toussie v. Town Bd. of East Hampton*, 2012 WL 2309049 (E.D.N.Y. 2012) .............. 8

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ........................................ 8

*Whalen v. City of Syracuse,* No. CV–08–0246, 2008 WL 2073941, at *1
(N.D.N.Y. May 14, 2008) .................................................................................. 9

*Willets Point Industry and Realty Ass'n v. City of New York,*
2009 WL 4282017 (E.D.N.Y. 2009) .................................................................. 9

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of the plaintiff, Richard Guertin ("Guertin"), in support of Guertin's motion for summary judgment pursuant to Fed.R.Civ.Proc. Rule 56. All of the facts upon which this motion is based are set forth in the allegations contained in Guertin's verified complaint and Rule 56.1 Statement and those facts are respectfully incorporated in this memorandum.

## THE NATURE OF THE CLAIM

This action was brought pursuant to the Administrative Procedure Act to seek judicial review of a final determination made by the defendant United States Department of Housing and Urban Development ("HUD") which denied Guertin's request that HUD authorize the City of Middletown, NY (the "City") to reimburse Guertin, out of the City's HUD administrative funds, for the expenses that he incurred in his defense of a criminal proceeding. HUD's determination was issued in a June 12, 2008 letter of Elton J. Lester, then Acting Associate General Counsel of HUD's Office of Assisted Housing and Community Development (Complaint, at 13, Exhibit E) and was affirmed, upon Guertin's and the City's requests for reconsideration, by letters dated February 9, 2011, from Yolanda Chavez, Deputy Assistant Secretary for Grant Programs (Complaint, at 22-23, Exhibits L and M).

Guertin claims that HUD's determination is arbitrary and capricious and is in violation of his right to equal protection as guaranteed by the Fifth Amendment.[1]

---

[1] The Complaint mistakenly asserts Guertin's equal protection claim under the Fourteenth Amendment. On the consent of the US Attorney, Guertin respectfully requests that the

1

## ARGUMENT

### Point 1
### HUD's determination is arbitrary and capricious

Under the Administrative Procedure Act, a reviewing court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Natural Resources Defense Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011), *quoting* 5 U.S.C. §706(2)(A). While "[i]n reviewing agency action, this Court may not 'substitute its judgment for that of the agency'[,]" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), the Court's "inquiry must be searching and careful." *U.S. E.P.A.*, 658 F.3d at 215, *quoting, Natural Res. Def. Council, Inc. v. FAA*, 564 F.3d 549, 555 (2d Cir. 2009). "The record must show that 'the agency ... examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *U.S. E.P.A.*, 658 F.3d at 215, *quoting FAA*, 564 F.3d at 555; *see, also, Cablevision Systems Corp. v. F.C.C.*, 570 F.3d 83, 92 (2d Cir. 2009) ("An administrative agency has a duty to explain its ultimate action."). "Moreover, the agency's decision must reveal a 'rational connection between the facts found and the choice made.'" *U.S. E.P.A.*, 658 F.3d at 215, *quoting FAA*, 564 F.3d at 555. Although this Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned, . . . [it] may not supply a reasoned basis for

---

Complaint be deemed amended to assert that his equal protection claim comes under the Fifth Amendment. *See, Smith v. Defendant A*, L 1514590, 3 -4 (S.D.N.Y. 2009) ("[T]here is a well-established equal protection component to the Fifth Amendment Due Process Clause applicable to the federal government."), *quoting Skelly v. I.N.S.*, 168 F.3d 88, 91 (2d Cir. 1999).

2

the agency's action that the agency itself has not given." (internal quotation marks omitted). *U.S. E.P.A.*, 658 F.3d at 215.

In September, 2007, HUD authorized the City to reimburse Neil Novesky, the former Director of Middletown's Office of Economic and Community Development and one of Guertin's co-defendants in the same criminal proceeding, $79,800.00 for his, Novesky's, legal expenses out of the City's HUD administrative funds. HUD did so for the following reason:

> Section 105(a)(13) of the Housing and Community Development Act of 1974 authorizes CDBG funds to be used for "the payment of reasonable administrative costs and carrying charges related to the planning and execution of community and housing activities." *See also* 24 CFR § 570.206. The CDBG regulation at 24 CFR § 570.200(a)(5) further subjects administrative costs to OMB Circular A-87, "Cost Principles for State, Local, and Indian Tribal Governments" (May 10, 2004). Under the Circular, Attachment B, section 10.b, *Defense and prosecution of criminal and civil proceedings, and claims* provides "[l]egal expenses required in the administration of [f]ederal programs are allowable."
>
> As a general matter, CPD has taken the position that a recipient may use CDBG funds to pay reasonable legal expenses incurred in defense of lawsuits resulting from its administration of the CDBG program as long as the grantee has acted with due diligence in the administration of the program. In this case, we note that the proceedings resulted from actions undertaken in the ordinary course of the Director's employment and the court acquitted him of all charges after a trial on the merits. Further, no CDBG funds financed the employee's defense during the proceedings. Under these circumstances, we believe the legal expenses would be *required* in the administration of the CDBG program for purposes of section 10.b (emphasis added).

*See*, Complaint, at ¶¶9-11; Exhibit B (September 7, 2007 Letter of Elton J. Lester)

In a letter dated March 17, 2008 (*see*, Complaint, at ¶12; Exhibit D) Guertin's attorney requested that HUD authorize the City to reimburse Guertin's expenses and

3

provided the following reasons why HUD should consider Guertin to be identically situated to Novesky:

1. The criminal allegations against Guertin involved the same administration of Federal programs that gave rise to the criminal allegations against Novesky.

2. Guertin and Novesky faced the same criminal allegations of improperly using CDBG funds for economic development loans.

3. The economic development loans that formed the bases of the charges against Guertin are the same loans upon which the charges against Novesky were based.

4. The court which presided over the non-jury trial in the criminal proceeding "expressly found that 'every single one' of the seven economic development loans questioned were properly granted and documented." (*Quoting* September 7, 2007 Lester Letter, Complaint's Exhibit B.)

5. Guertin, like Novesky, was found not guilty of all of the charges against him that were contained in the indictment.

6. Guertin played an integral role in the administration of the subject HUD loans and thus, like Novesky, the "reasonable legal expenses" incurred by Guertin were in the defense of criminal charges that "resulted from actions undertaken in the ordinary course of [Guertin's] employment". (*Quoting* September 7, 2007 Lester Letter, Complaint's Exhibit B.)[2]

---

[2] Guertin, as Corporation Counsel, was involved in the administration of the specific CDBG funds at issue in the criminal proceedings, as the indictment involved, *inter alia*, funds under §108 of the Housing and Community Development Act of 1974 (42 USC §5308) and the definition of "CDBG funds" under 24 CFR 570.3 includes §108 funds. HUD does not allow a

4

7. As Middletown's Corporation Counsel, Guertin's typical duties regarding HUD loans included reviewing (and sometimes assisting in the preparation of) commitment letters from the City's Office of Economic and Community Development ("OECD"); obtaining and reviewing preliminary title insurance reports; obtaining and reviewing HUD documentation; obtaining the Mayor's and the OECD Director's signatures on documents required by HUD; negotiating with HUD regarding documentation requirements; preparing legal opinion letters as required by HUD; preparing and reviewing promissory notes; preparing mortgages when the City was taking back a mortgage; preparing or reviewing collateral security agreements when the City was taking security against the borrowers' personal property; attending closings when requested by the OECD Director; and taking enforcement action on delinquent loans when requested by the OECD.

8. Like Novesky, "no CDBG funds financed [Guertin's] defense during the proceedings." (*quoting* September 7, 2007 Lester Letter, Complaint's Exhibit B)

HUD determined, by Lester's letter of June 12, 2008 (*see*, Complaint, at ¶13; Exhibit E), that Guertin's legal expenses "are not eligible under the CDBG program" because, according to HUD, the activities and responsibilities of the Corporation Counsel, as enumerated above, "did not serve as the basis for the criminal proceedings brought against [Guertin]." Specifically, HUD's stated reason for refusing to authorize reimbursement was that

---

§108 loan to be completed without a legal opinion/authorization from the municipal attorney which, in Middletown's case, was Guertin, the Corporation Counsel.

the court documents described Mr. Guertin's questioned activities as being undertaken for the mayor's personal benefit as opposed to providing legal services to carry out the city's CDBG program. The court presiding over the case stated "attorney Guertin did wear two hats. And in his zeal to represent his private client DeStefano, he was blinded to his obligation to the City of Middletown ... So[,] Mr. Guertin did his job as attorney for a private citizen, DeStefano." In our view, legal expenses arising from a mayor's private business dealings, as well as those arising from advising the mayor on such matters, are not required in the city's administration of the CDBG program.

*See*, Complaint, at ¶13; Exhibit E.

In giving this explanation for denying Guertin's request for reimbursement, HUD misstated the reason why Guertin was indicted. Guertin's indictment and legal expenses did not arise from his "advising the mayor" on the "mayor's private business dealings." The indictment arose out of an unfounded suspicion that, because Guertin was the Mayor's personal attorney, he must have been willing to compromise his duties and obligations, as Corporation Counsel, in the administration of the City's CDBG program. This is borne out by the nature of the charges in the indictment that were made against Guertin.

Guertin was named in 8 of the 55 counts in the indictment (Complaint, Exhibit A).[3] Guertin's conduct as Middletown's Corporation Counsel served as the *explicit* basis for 6 of those 8 counts. *See*, Complaint, Exhibit A, Count 1 [Defrauding the Government in violation of NYS Penal Law §195.20 (referring to the defendants, including Guertin as "being public servants or party officers")]; Counts 38, 41 [Official Misconduct in violation of NYS Penal Law §195.00(1) (alleging that the defendants, "acting

---

[3] DeStefano was named in 52 of the counts and Novesky in 22.

6

individually and in concert with one another . . . did commit an act relating to their offices")]; Counts 39 and 42 [Engaging in a Prohibited Conflict of Interest in violation of NYS General Municipal Law §§801 and 805 (referring to Guertin as a "municipal officer or employee")]; Count 55 [Conspiracy in the Fifth Degree in violation of NYS Penal Law §105.05(1) (alleging that Guertin acted "in his capacity as Corporation Counsel for the City of Middletown")]. Thus, even if the trial judge did say that Guertin "did his job as attorney for a private citizen," that is not what Guertin was indicted for. He was indicted on the mistaken belief that he had done something wrong *as the attorney for the City* in the course of his administration of the City's CDBG program.

While there may be differences of opinion as to whether Guertin had an ethical obligation to not represent the Mayor on any HUD loans that may have affected the Mayor's interests, the dispositive facts that are not in dispute are (1) "every single one of the seven economic development loans questioned were properly granted and documented", and (2) but for the fact that Guertin was the City's attorney involved in the administration of those loans, Guertin would not have been charged with the crimes set forth in the indictment. Based upon these two undisputed and undeniable facts, the same reason for HUD's approving Novesky's request for reimbursement of his legal expenses applies, with equal force, to Guertin's request. For, just as the charges in the indictment "resulted from actions undertaken in the ordinary course of the *Director's* employment" (September 7, 2007 Lester Letter), the charges in the indictment also resulted from actions undertaken in the ordinary course of the *Corporation Counsel's* employment.

7

Since HUD determined that Novesky's "legal expenses would be required in the administration of the CDBG program for purposes of section 10.b", the same determination must be made for Guertin's legal expenses. Novesky and Guertin are identically situated under section 10.b and HUD's attempt to distinguish them is arbitrary and capricious.

### Point 2
### HUD's determination violates Guertin's
### 5th Amendment Right to Equal Protection

Guertin's equal-protection claim is in the nature of a "class of one" claim. *See, Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). Courts "have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Morel v. Thomas*, 2003 WL 21488017, 5 (S.D.N.Y. 2003), *quoting Olech,* 528 U.S. at 564; *see, also Toussie v. Town Bd. of East Hampton*, 2012 WL 2309049, 7 (E.D.N.Y. 2012) (same). "Thus, the three elements of a 'class of one' equal-protection claim are that 1) the person received different treatment than others similarly situated, and that this disparate treatment was 2) irrational and wholly arbitrary and 3) intentional." *Thomas*, 2003 WL 21488017, 5, *citing Giordano v. City of New York,* 274 F.3d 740, 751 (2d Cir.2001); *DeMuria v. Hawkes,* 328 F.3d 704, 706-07 (2d Cir.2003).

"[T]here is nothing in the plain language of *Olech* that requires an allegation of malice[.]" *Pappas v. Town Of Enfield*, 2010 WL 466009, 6 (D.Conn.,2010) "[D]istrict courts since *Olech* have typically required that a successful class-of-one plaintiff

8

establish [that] . . . the disparate treatment was *either* (a) without a rational basis, or (b) motivated by animus." *Willets Point Industry and Realty Ass'n v. City of New York*, 2009 WL 4282017, 4 (E.D.N.Y. 2009) (emphasis in original), *citing Oleson v. Morgan*, No. 06–CV–959, 2009 WL 2045682, at *7 (N.D.N.Y. July 8, 2009), *Whalen v. City of Syracuse*, No. CV–08–0246, 2008 WL 2073941, at *1 (N.D.N.Y. May 14, 2008), *Assoko v. City of New York*, 539 F.Supp.2d 728, 735 (E.D.N.Y.2008). The element of "intentional disparate treatment," requires the class of one plaintiff simply to prove that the agency "knew that they were treating [Guertin] differently from anyone else." *Assoko v. City of New York*, 539 F.Supp.2d 728, 736 (S.D.N.Y. 2008), citing *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir.2001).

While the Supreme Court's decision in *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008) eliminated class-of-one claims for government employees, Guertin, as Corporation Counsel, was an employee of the City of Middletown, not HUD, and thus *Engquist* should not be a bar to Guertin's "class of one" claim. *See, Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 143 (2d Cir. 2010), where the Second Circuit held that "*Engquist* does not bar all class-of-one claims involving discretionary state action" and joined in the Seventh Circuit's examination of the "underlying reasoning" in *Engquist*:

> First, the [Engquist] Court emphasized that the judgments unsuited to a class-of-one claim are typically "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." That describes employment decisions because treating like individuals differently in the employment context is "par for the course." Second, the Court noted that the constitutional constraints on government are much less onerous when it acts as employer as compared to acting as sovereign. Finally, the Court recognized that, in the employment context, an

uncabined class-of-one theory risks making a constitutional case out of every decision by a government employer.

*Kusel*, 626 F.3d at 141-142, *quoting Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009).

Thus, for the same reasons set forth in Point 1, above (that HUD has acted arbitrarily and capriciously by refusing to apply the same interpretation of Attachment B, section 10.b to Guertin's request as it applied to Novesky's), this Court should find that HUD also violated Guertin's right to equal protection under the Fifth Amendment. Guertin has clearly demonstrated, on the undisputed facts in this record, that (1) he received "different" treatment from someone who was "similarly situated", (2) this disparate treatment was "irrational and wholly arbitrary" and (3) it was "intentional". *Thomas*, 2003 WL 21488017, at 5.

## CONCLUSION

Based upon the foregoing, plaintiff's Rule 56 motion for summary judgment should be granted and plaintiff should receive the relief sought in the Complaint.

Dated June 25, 2012

ROBERT N. ISSEKS, ESQ. (RI 0241)
Attorney for Plaintiff
6 North Street
Middletown, New York 10940
(845) 344-4322
isseks@frontiernet.net

TO: MICHAEL J. BYARS
Assistant United States Attorney
U.S. Department of Justice
86 Chambers Street
New York, New York 10007