UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF CASE

RICHARD GUERTIN,

                  Plaintiff,

      -against-

UNITED STATES OF AMERICA, DEPARTMENT
OF HOUSING AND URBAN DEVELOPMENT,

                Defendant.

11 Civ. 4661 (KMK) (PED)

**DEFENDANT THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT'S
MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2793
Facsimile:  (212) 637-2717
Email:  michael.byars@usdoj.gov

MICHAEL J. BYARS
Assistant United States Attorney
   – Of Counsel –

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ........................................................................................................................1

   A. HUD's Community Development Block Grant Program ..................................................1

   B. The Criminal Case ...........................................................................................................3

      1. The Indictment ..........................................................................................................3

      2. The Verdict ...............................................................................................................6

   C. Novesky Asks HUD to Authorize Middletown to Reimburse Him for His Criminal
      Defense Costs Using CDBG Funds .................................................................................8

   D. Guertin Asks HUD to Authorize Middletown to Reimburse Him for His Criminal
      Defense Costs Using CDBG Funds ...............................................................................10

   E. HUD Denies Guertin's Request for Reimbursement Due to His Conflict of Interest .......11

   F. Guertin Seeks Reconsideration of the Denial of Authorization to Reimburse Him From
      CDBG Funds ..................................................................................................................11

   G. The Federal Court Action ..............................................................................................14

ARGUMENT .............................................................................................................................15

POINT I.  HUD'S DETERMINATION THAT CIRCULAR A-87'S COST PRINCIPLES
       DO NOT AUTHORIZE MIDDLETOWN TO USE CDBG FUNDS TO
       REIMBURSE GUERTIN'S LEGAL EXPENSES IS CORRECT AND
       ENTITLED TO DEFERENCE ....................................................................................15

POINT II.  HUD'S APPLICATION OF CIRCULAR A-87 IS NOT ARBITRARY AND
       CAPRICIOUS .............................................................................................................18

POINT III. HUD'S DECISION DOES NOT VIOLATE GUERTIN'S EQUAL PROTECTION
       RIGHTS BECAUSE HUD'S DECISION WAS NOT IRRATIONAL AND
       WHOLLY ARBITRARY .............................................................................................23

CONCLUSION ..........................................................................................................................23

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971).....................................................................................................19

*Dixson v. United States*,
465 U.S. 482 (1984).......................................................................................................2

*Envtl. Def. v. U.S. E.P.A.*,
369 F.3d 193 (2d Cir. 2004)................................................................................ 19-20

*Giordano v. City of New York*,
274 F.3d 740 (2d Cir. 2001)..................................................................................23

*In re WorldCom, Inc. Sec. Litig.*,
No. 02 Civ. 3288, 2003 WL 22953645 (S.D.N.Y. Dec. 16, 2003)...................................20

*Int'l Fabricare Inst. v. EPA*,
972 F.2d 384 (D.C. Cir. 1992) ...............................................................................19

*Islander East Pipeline Co., LLC v. McCarthy*,
525 F.3d 141 (2d Cir. 2008)..................................................................................19

*Marsh v. Oregon Natural Resources Council*,
490 U.S. 360 (1989)................................................................................19, 20

*Motor Vehicle Mfrs. Ass'n of U.S., Ind. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)...............................................................................................19

*Mullins v. City of New York*,
653 F.3d 104 (2d Cir. 2011)...........................................................................16, 17, 18

*Natural Res. Def. Council v. EPA*,
658 F.3d 200 (2d Cir. 2011)..................................................................................19

*People v. DeStefano*,
46 A.D.3d 570, 846 N.Y.S. 2d 375 (2d Dep't 2007) ..........................................................6

*State of New York v. Shalala*,
959 F. Supp. 614 (S.D.N.Y. 1997) ..........................................................................15, 17

*Yale New Haven Hosp. v. Leavitt,*
    470 F.3d 71 (2d Cir. 2006)......................................................................................19

**STATUTES AND REGULATIONS**

5 U.S.C. § 701 ..........................................................................................................14

5 U.S.C. § 706(2)(A)................................................................................................18

42 U.S.C. § 5301 ........................................................................................................1

42 U.S.C. § 5301(c) ...................................................................................................2

42 U.S.C. § 5303 ........................................................................................................2

42 U.S.C. § 5304 ........................................................................................................2

42 U.S.C. § 5304(e) ...............................................................................................2, 3

42 U.S.C. § 5305(a) ...................................................................................................2

42 U.S.C. § 5305(a)(13)........................................................................................2, 9

42 U.S.C. § 5311 ........................................................................................................3

24 C.F.R. pt. 225 app'x B .................................................................................*passim*

24 C.F.R. § 570.200(a).............................................................................................2

24 C.F.R. § 570.200(a)(5)................................................................................2, 9, 15

24 C.F.R. § 570.206 ..................................................................................................9

24 C.F.R. § 570.501(b)..............................................................................................2

24 C.F.R. § 570.506 ..................................................................................................2

24 C.F.R. § 570.507 ..................................................................................................3

24 C.F.R. § 570.900 ..................................................................................................3

49 Fed. Reg. 43852-01 (Oct. 31, 1984) .................................................................15

53 Fed. Reg. 34416-01 (Sept. 6, 1988) ..................................................................15

53 Fed. Reg. 40220-01 (Oct. 14, 1988) .................................................................15

**OTHER**

Heather Yakin, *DeStefano Suit Against Middletown Tossed, but Mayor Gets Settlement Anyway*,
      Times Herald-Record, Feb. 18, 2011.................................................................................10

Defendant the Department of Housing and Urban Development (the "Government" or "HUD"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its cross-motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (the "Motion") and in opposition to the motion for summary judgment filed by plaintiff Richard Guertin.

## PRELIMINARY STATEMENT

Plaintiff Richard Guertin asks this Court to overturn HUD's determination that the City of Middletown cannot use funds from HUD's Community Development Block Grant ("CDBG") program to reimburse him for his criminal defense costs.  Guertin incurred these costs due to his simultaneous representation of both Middletown and Middletown's Mayor in loans of CDBG funds for the ultimate benefit of Middletown's Mayor.  Although the criminal court concluded that Guertin lacked the *mens rea* required to convict Guertin, in its verdict it also noted that Guertin had acted under a conflict of interest in this dual representation and should have exercised more due care.  After HUD duly considered Guertin's request for reimbursement, including review of documents from the criminal case as well as the relevant legal authorities and its interpretations thereof, HUD determined that reimbursement would not be proper under the particular circumstances of Guertin's case.  That decision is reasoned and rational, and should be upheld under the applicable legal standards.

## BACKGROUND

### A.    HUD's Community Development Block Grant Program

The CDBG program originated under the Housing and Community Development Act of 1974 ("HCDA"), which, as amended, is codified at 42 U.S.C. § 5301 *et seq*.  The HCDA aims to promote "the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of

low and moderate income." 42 U.S.C. § 5301(c). The HCDA authorizes HUD to provide CDBGs to states, tribes and local governments to carry out activities in accordance with the statute. *Id.* § 5303. The statute delineates broad categories of activities for which grantees may use their CDBG funds. *Id.* § 5305(a); 24 C.F.R. §§ 570.200-570.206 (guidance on eligible activities). By enacting the legislation as a federal block grant statute, Congress delegated the day-to-day administration of the program, including the actual expenditure of federal funds, to the grant recipients. *Dixson v. United States*, 465 U.S. 482, 486 (1984); 42 U.S.C. § 5304; 24 C.F.R. § 570.501(b). The HCDA provides a comprehensive list of eligible uses of CDBG funds, including for the "payment of reasonable administrative costs and carrying charges related to . . . the planning and execution of community development and housing activities." 42 U.S.C. § 5305(a)(13). By regulation, HUD has imposed specific criteria for determining whether a particular activity is eligible for assistance through CDBG funds. 24 C.F.R. § 570.200(a). These criteria include the requirement that the costs incurred conform with OMB Circular A-87, "Cost Principles for State, Local, and Indian Tribal Governments" (May 10, 2004) ("Circular A-87"). *Id.* § 570.200(a)(5) (incorporating Circular A-87 by reference: "Cost principles. Costs incurred, whether charged on a direct or an indirect basis, must be in conformance with OMB Circular[] A-87, '"Cost Principles for State, Local and Indian Tribal Governments[.]"'").

The HCDA gives HUD authority to review a grant recipient's use of its CDBG funds to ensure compliance with federal law. 42 U.S.C. § 5304(e). HUD therefore requires that "[e]ach recipient shall establish and maintain sufficient records to enable the Secretary to determine whether the recipient has met the requirements" of the program. 24 C.F.R. § 570.506. Each grant recipient also must report to HUD as necessary concerning the use of CDBG funds. 42 U.S.C. § 5304(e); 24 C.F.R. § 570.507 (requiring reports in accordance with 24 C.F.R. part 91,

as well as other "reports and information as HUD determines are necessary").  If a recipient uses

CDBG funds for an expense that HUD determines does not comply with the requirements of the

program, HUD may take various corrective actions.  42 U.S.C. §§ 5304(e), 5311; 24 C.F.R. §§

570.900-570.913.

**B.     The Criminal Case**

**1.     The Indictment**

Guertin was indicted by an Orange County grand jury in August 2004 for alleged

misconduct relating to CDBG funds while he was Middletown's corporation counsel.  AR 126-

149.  The indictment also named Joseph DeStefano and Neil Novesky for alleged misconduct

relating to CDBG funds while they were Middletown's Mayor and Community Development

Director, respectively.  *Id.*

Specifically, Guertin was charged with the following violations of New York law:

- Defrauding the government during the period June 16, 1997 to June 1, 2003 by,

    acting individually and in concert with [DeStefano and Novesky],
    . . . engag[ing] in a scheme constituting a systematic ongoing
    course of conduct with intent to defraud . . . or to obtain property
    from the state or a political subdivision of the state or a
    governmental instrumentality within the state by false or fraudulent
    pretenses, representations or promises, and so obtained property
    with a value in excess of one thousand dollars from such state,
    political subdivision or governmental instrumentality,

    AR 127, in violation of N.Y. Penal Law § 195.10 (Count 1);

- Engaging in a prohibited conflict of interest during the period June 19, 1997 to

    June 1, 2004 by allegedly acting in concert with DeStefano, who

    knowingly and willfully ha[d] an interest in a contract with the
    municipality of which [DeStefano] was an officer or employee,
    when [DeStefano] . . . had the power or duty to negotiate, prepare,
    authorize or approve the contract or authorize or approve payment
    [thereunder], audit bills or claims under the contract, or appoint an

- 3 -

officer or employee who has any of the powers or duties set forth above,

AR 139-40, in violation of N.Y. Gen. Mun. Law §§ 801, 805 (Count 37);

• Engaging in official misconduct during the period June 19, 1997 to June 1, 2004

by

acting individually and in concert with [DeStefano and Novesky], with intent to obtain a benefit or deprive another person of a benefit, [by] commit[ting] an act relating to their offices but which constitute an unauthorized exercise of their official functions, knowing that such act was unauthorized,

AR 140, in violation of N.Y. Penal Law § 195.00 (Count 38);

• Engaging in a prohibited conflict of interest during the period June 19, 1997 to

April 17, 1998 by

knowingly and willfully hav[ing] an interest in a contract with the municipality of which he was an officer or employee, when he . . . had the power or duty to negotiate, prepare, authorize or approve the contract or authorize or approve payment [thereunder], audit bills or claims under the contract, or appoint an officer or employee who has any of the powers or duties set forth above,

AR 140, in violation of N.Y. Gen. Mun. Law §§ 801, 805 (Count 39);

• Engaging in a prohibited conflict of interest during the period September 15, 1997

to November 25, 1998 by allegedly acting in concert with DeStefano, who

knowingly and willfully ha[d] an interest in a contract with the municipality of which [DeStefano] was an officer or employee, when [DeStefano] . . . had the power or duty to negotiate, prepare, authorize or approve the contract or authorize or approve payment thereunder, audit bills or claims under the contract, or appoint an officer or employee who has any of the powers or duties set forth above,

AR 141, in violation of N.Y. Gen. Mun. Law §§ 801, 805 (Count 40);

• Engaging in official misconduct during the period September 15, 1997 to

November 25, 1998, by

- 4 -

> acting individually and in concert with [DeStefano and Novesky], with intent to obtain a benefit or deprive another person of a benefit, [by] commit[ting] an act relating to their offices but which constitute an unauthorized exercise of their official functions, knowing that such act was unauthorized,

AR 141, in violation of N.Y. Penal Law § 195.00 (Count 41);

- Engaging in a prohibited conflict of interest on or about September 15, 1997, by

> knowingly and willfully hav[ing] an interest in a contract with the municipality of which he was an officer or employee, when he . . . had the power or duty to negotiate, prepare, authorize or approve the contract or authorize or approve payment [thereunder], audit bills or claims under the contract, or appoint an officer or employee who has any of the powers or duties set forth above,

AR 141-42, in violation of N.Y. Gen. Mun. Law §§ 801, 805 (Count 42);

- Engaging in a conspiracy with DeStefano and Novesky during the period June 16, 1997 to June 4, 2004 with the objective of causing DeStefano

> illegally [to] receive an interest in the proceeds of various [HUD] loans administered through the City of Middletown, [none of which was] taken out in . . . DeStefano's name. . . . It was . . . Guertin's role in the conspiracy to draft agreements between Mayor DeStefano, his corporation, and the named recipients of loans administered through the City of Middletown, and to prepare legal papers associated with the loans, such as mortgages and UCC Security Chattel Agreements in his capacity as Corporation Counsel for the City of Middletown.

AR 148, in violation of N.Y. Penal Law § 105.05 (Count 55). The indictment's alleged overt acts in furtherance of the alleged conspiracy included Guertin's drafting of "an 'option to purchase' agreement between . . . DeStefano and [a] proceed loan recipient" on or about June 19, 1997, and a "'sub-lease' agreement between . . . DeStefano and [a] proceed loan recipient" on or about September 15, 1997.  AR 149.

2.      **The Verdict**

At a bench trial before the Hon. Stewart A. Rosenwasser, Guertin was found not guilty of all of the charges against him.  *See* AR 78-125.[1]  Nevertheless, in its verdict, the court concluded that Guertin had assisted DeStefano, as his personal lawyer, in a transaction that the court found "troubling" and through which DeStefano obtained the benefit of (and took responsibility for) a loan of CDBG funds for his own personal business dealings, even though the loan was originally taken out by a third party:

> [T]he documents and the testimony clearly established, that defendant DeStefano, *with the advice of his attorney*, entered into a proposed lease and a proposed option to purchase that building at 5-11 North Main Street.  And in so doing there was recognition that a loan in the amount of $100,000 would be obtained by Mr. Ross to facilitate renovations to that building, to the Office of Economic Development.
>
> It was agreed by defendant DeStefano that he would be obligated to repay that loan.  Under all circumstances he was obligating himself to repay that loan.
>
> He thereafter, the loan closed, the money was disbursed and paid over to contractors presumably on this record.  Hired directly by DeStefano and paid directly with these funds with the repairs and modifications and improvements being done to the specification of Mr. DeStefano. . . .
>
> [I]n the lease signed between DeStefano and Ross it recognizes that the renovation, that if there is a mortgage taken on the building for renovation at the request of the tenant, that that mortgage would not be subordinated to any other mortgage.  So that it would maintain the first position.  And Mr. Ross would be protected as best he could be under that situation.
>
> I also reviewed the Orange County Trust documents that were placed in evidence, and it clearly appeared in the business plan.  And Mr. DeStefano included in his costs to project $100,000 received directly from the City of Middletown.
>
> So for all intents and purposes and on an economic basis, this loan from the Office of Economic Development was for the benefit of the defendant DeStefano and by his paying back the loan with checks on his business account, he was performing directly the terms and conditions of that contract.

---

[1] Novesky also was found not guilty, and DeStefano was convicted on two reduced counts that were later overturned on appeal.  AR 78-125; *People v. DeStefano*, 46 A.D.3d 570, 846 N.Y.S. 2d 375 (2d Dep't 2007).

> And under all of these circumstances the Court does find as to the Ross loan that
> [DeStefano] engaged in a prohibited conflict.

AR 105-07 (emphasis added).

Notwithstanding the above factual findings, the court concluded that DeStefano had not

committed a crime because the evidence did not establish the *mens rea* required by New York's

conflict of interest law, namely, that the defendant act with an

> evil motive [that] must be fraught with activities which are incompatible with the
> paramount duty of a public official.  The conflicting interest should require a
> finding of not just illegality, but of a facelessness to one's obligation and fraud.

AR 108.

With respect to Guertin, the court similarly concluded that, although Guertin had acted in

his private capacity as DeStefano's private lawyer and without due regard for his obligations to

Middletown as its corporation counsel, Guertin was not guilty of conspiracy because he had not

acted with the requisite level of intent in advising DeStefano:

> So I find it hard to discern the existence of a conspiracy.  And I must . . . say to
> charge conspiratorial conduct to an attorney for giving advice is a dangerous
> precedence.  Even if the advice turns out to be wrong or ill advised.  And in this
> case it was ill advised, because like it or not, *attorney Guertin did wear two hats.*
> *And in his zeal to represent his private client DeStefano, he was blinded to his*
> *obligation to the City of Middletown and he should have exercised more due care*
> *in making the evaluation that I have been called upon to make in order to decide*
> *this case.*
>
> Whether he told DeStefano this could be a problem or was [a] problem or wasn't
> a problem, I don't know.  And I will not speculate.  It is not in the record.  All I
> know he represented him.  Lawyers don't become co-conspirators or aiders or
> abetters by giving legal advice unless there is some further demonstrable criminal
> plan, which I simply don't find here.
>
> *So Mr. Guertin did his job as attorney for a private citizen, DeStefano.*  Perhaps
> he didn't do his job quite as well as corporate counsel for the City of Middletown.
> You know, sometimes your nose will tell you something shouldn't be done and
> maybe the smell of this ought to have been enough to go another way.
>
> But having said that I find as to the defendant Guertin that he lacked the necessary
> – that there is no evidence that he had reckless amount – that he knowingly,

- 7 -

willfully, violated [the] statute.  That he acted in a way co-conspiracy with
defendant DeStefano.  As to defendant Guertin, I find him not guilty.

AR 111-12 (emphases added).

By contrast, the court found that Novesky had no such dual allegiance; rather, the
evidence established that Novesky simply "did his job," and was not "involved in any illegal
scheme to aid or abet anyone else to obtain any benefits that they were not otherwise entitled to."
AR 100.

**C.     Novesky Asks HUD to Authorize Middletown to Reimburse Him for His Criminal
        Defense Costs Using CDBG Funds**

Following the verdict, Novesky was reinstated as Director of the Office of Economic and
Community Development.  AR 76-77.  In August 2006, Otto Hetzel, outside counsel for
Middletown, wrote to Robert Kenison, HUD's Associate General Counsel for Assisted Housing
and Community Development, to ask whether Middletown could reimburse Novesky for his
criminal defense costs using CDBG funds.  AR 54-55.  In March 2007, Mr. Hetzel subsequently
wrote to Nelson Bregón, HUD's General Deputy Assistant Secretary, and William Eargle,
HUD's Deputy Assistant Secretary for Operations and Comptroller, to request that Middletown
be authorized to reimburse Novesky.  AR 42-45.  In his March 2007 letter, Mr. Hetzel
maintained that reimbursement was authorized under Circular A-87.  *Id.*

By letter dated September 7, 2007, HUD's Acting Associate General Counsel for the
Office of Assisted Housing and Community Development, Elton Lester, agreed with Mr. Hetzel
that authorization was appropriate in Novesky's circumstances.  AR 38-39.  Mr. Lester explained
that Congress had authorized the use of CDBG funds for the "'payment of reasonable
administrative costs and carrying charges related to [. . .] the planning and execution of
community development and housing activities.'"  AR 38 (quoting 42 U.S.C. § 5305(a)(13) and
citing 24 C.F.R. § 570.206 (containing substantially similar language)).  Mr. Lester also noted

- 8 -

that, under HUD regulations, administrative costs were subject to Circular A-87's cost

principles.  AR 38 (citing 24 C.F.R. § 570.200(a)(5)).  Specifically, Mr. Lester pointed to Section

10.b of Circular A-87, which provides that "legal expenses required in the administration of

federal programs are allowable," AR 38 (internal quotation marks and alterations omitted), and

noted that HUD's Office of Community Planning and Development had determined that a

grantee could use CDBG funds to pay "reasonable legal expenses incurred in defense of lawsuits

resulting from its administration of the CDBG program as long as the grantee has acted with due

diligence in the administration of the program."  AR 38.

     Mr. Lester concluded that reimbursement from CDBG funds would be permitted in Mr.

Novesky's case because the legal expenses in question were "required in the administration of

the CDBG program for purposes of section 10.b" of Circular A-87.  AR 39.  In reaching this

conclusion, Mr. Lester noted that "the proceedings resulted from actions undertaken in the

ordinary course of [Novesky]'s employment," "the court acquitted [Novesky] of all charges after

a trial on the merits," and "no CDBG funds financed [Novesky]'s defense during the

proceedings."  AR 38-39.

**D.**    **Guertin Asks HUD to Authorize Middletown to Reimburse Him for His Criminal
Defense Costs Using CDBG Funds**

     In March 2008, counsel for Guertin wrote to Mr. Lester to request reimbursement of the

costs of his defense in the criminal proceeding, as well as reimbursement for DeStefano's

defense costs.  AR 34-36.[2]  In his March 2008 letter, counsel cited Mr. Lester's September 2007

---

[2]  Shortly after counsel wrote his March 2008 letter, DeStefano sought "reimbursement of his
criminal defense funds in a separate lawsuit," AR 12, and thus his defense costs are not at issue
in this proceeding.  *See* Amended Complaint at ¶ 78, *DeStefano v. Duncanson, et al.*, No. 08 Civ.
3419 (GBD) (S.D.N.Y.) (dkt. item 3) (asserting that DeStefano's actual damages included "the
costs and legal expenses associated with defending himself in connection with the criminal
[charges] filed against him") (action filed April 7, 2008).  Although DeStefano's complaint was
dismissed, that action appears to have resulted in a settlement involving a payment from

letter to Mr. Hetzel authorizing reimbursement of Novesky's defense costs.  AR 34.  Counsel

also argued that reimbursement should be permitted with respect to Guertin and DeStefano

because the criminal allegations against them involved the same administration of Federal

programs, the same allegations of improperly using CDBG funds and the same loans as in the

charges against Novesky.  AR 34.  Counsel further noted that the trial court found Guertin and

DeStefano not guilty of all charges contained in the indictment, like Novesky, and that

DeStefano's conviction on the reduced counts was overturned on appeal.  AR 35.  In addition,

counsel asserted that Guertin and DeStefano played integral roles in the administration of the

CDBG funds at issue and that their actions were undertaken in the ordinary course of their

employment.  AR 35.  Specifically, with respect to Guertin's responsibilities regarding CDBGs,

counsel noted that Guertin typically would review (and sometimes assist in preparing)

commitment letters, obtain and review preliminary title insurance reports, obtain and review

HUD documentation, obtain DeStefano's and Novesky's signatures, negotiate with HUD

regarding documentation requirements, prepare required legal opinions, prepare and review

promissory notes, prepare mortgages where applicable, prepare or review collateral security

agreements where applicable, attend closings and take enforcement action where loans were

delinquent.  AR 35.  Finally, counsel noted that, as with Novesky, no CDBG funds had been

used to pay for Guertin's or DeStefano's defense during the criminal proceedings.  AR 36.

Counsel sent copies of his March 2008 letter to Senators Schumer and Clinton and

Representative Hinchey.  AR 36.  Congressman Hinchey's office subsequently contacted HUD's

Office of Congressional and Intergovernmental Affairs regarding this issue.  AR 29.

---

Middletown's insurers to DeStefano.  *See* Heather Yakin, *DeStefano Suit Against Middletown
Tossed, but Mayor Gets Settlement Anyway*, Times Herald-Record, Feb. 18, 2011, *available at*
http://www.recordonline.com/apps/pbcs.dll/article?AID=/20110218/NEWS/102180387 (last
visited July 23, 2012).

**E.     HUD Denies Guertin's Request for Reimbursement Due to His Conflict of Interest**

By letter dated June 12, 2008, Mr. Lester responded to counsel's March 2008 letter.  AR

25-27.  In his letter, Mr. Lester referenced the conclusion in his September 2007 letter (*i.e.*, the

letter regarding reimbursement of Novesky) that, under HUD's interpretation of the cost

principles in Circular A-87, legal expenses were reimbursable only to the extent that they relate

to proceedings that result from actions undertaken in the ordinary course of an employee's

position.  AR 25.  He further explained that Guertin and DeStefano had undertaken the

questioned activities in their personal capacities, and that the criminal charges arose from such

personal activities.  AR 25-26.  Specifically, Mr. Lester quoted the court's characterizations of

Guertin's conduct in its verdict that Guertin had been acting "for [DeStefano]'s personal benefit

as opposed to providing legal services to carry out the city's CDBG program," and that

> attorney Guertin did wear two hats.  And in his zeal to represent his private client
> DeStefano, he was blinded to his obligation to the City of Middletown . . . .  So[,]
> Mr. Guertin did his job as attorney for a private citizen, DeStefano.

AR 26.  Mr. Lester concluded that these findings indicated that Guertin was acting outside of his

regular duties due to his conflict of interest and thus reimbursement would not be proper under

Circular A-87:  "[L]egal expenses . . . arising from advising the mayor on [his private business

dealings] are not required in the city's administration of the CDBG program."  AR 26.

**F.     Guertin Seeks Reconsideration of the Denial of Authorization to Reimburse Him
From CDBG Funds**

In July 2008, Guertin's counsel wrote to Mr. Lester regarding his intent to appeal the

determination.  AR 23.  On August 21, 2008, counsel wrote to Mr. Bregón, again asserting that,

as in Novesky's case, Guertin and DeStefano had been accused of misconduct that involved the

same administration of Federal programs and the same loans, that the loans were "properly

granted and documented,"[3] that Guertin and DeStefano had been found not guilty of the charges in the indictment and DeStefano's conviction on reduced charges was overturned on appeal, that Guertin and DeStefano played integral roles in administering the loans in question and that no CDBG funds had been used to finance their defense during the proceedings.  AR 19-20.  Counsel further asserted that Mr. Lester had neglected to "address the fact that Novesky's legal expenses were found – by Mr. Lester – to be eligible and that . . . DeStefano and Guertin are, in all material and relevant respects, identically situated with Novesky."  AR 20.  Counsel maintained that the court's statements regarding DeStefano's and Guertin's conflict of interest that Mr. Lester had found distinguishing did not detract from the fact that DeStefano and Guertin, like Novesky, were found not guilty and that the charges involved the same transactions as the charges against Novesky.  AR 20-21.  Counsel repeated his assertion that "Mr. Lester, himself, noted, when he decided to allow Novesky's legal expenses, that 'the [c]ourt expressly found that "every single one" of the seven economic development loans questioned were properly granted and documented."  AR 21 (quoting AR 19).  Counsel concluded by asserting that, in light of Mr. Lester's authorization of the reimbursement of Novesky's legal expenses, Mr. Lester's denial of authorization to reimburse Guertin and DeStefano had no rational basis in law or fact and thus was arbitrary and capricious and in violation of their due process and equal protection rights. AR 21.

---

[3] In this regard, counsel's August 21, 2008 letter characterizes Mr. Lester's September 2007 letter to Mr. Hetzel as "reflect[ing]" that the criminal court had "expressly found that 'every single one' of the seven economic development loans questioned were properly granted and documented."  AR 19.  This portion of Mr. Lester's letter, however, simply quotes Mr. Hetzel's earlier letters to HUD, *compare* AR 38 *with* AR 43, 55, which, in turn, appear to be referencing the criminal court's statements principally concerning the original recipients of the loans.  *See* AR 97-98.  This portion of the verdict should not be interpreted to negate the court's later findings that Guertin and DeStefano acted under a conflict of interest.  *See* AR 105-07, 111-12.  Nor does Mr. Lester's mere quotation of Mr. Hetzel's letters ascribe such a meaning to that portion of the verdict.  *See* AR 38.

On July 10, 2009, Peter Kovar, HUD's Assistant Secretary for Congressional and

Governmental Relations responded to a March 2009 letter from Representative Hinchey

inquiring about HUD's denial of authorization to reimburse Guertin's legal expenses from

Middletown's CDBG funds.  AR 15-16.  Mr. Kovar explained that HUD's decision had been

made following the Second Department's ruling in *People v. DeStefano*, that the denial was

consistent with Circular A-87, and that no new facts had been presented to cause HUD to

reconsider its decision.  AR 15.

On April 6, 2010, Guertin's counsel asked the Middletown Common Council to pass a

resolution requesting that HUD authorize reimbursement of Guertin's legal expenses, as it had

done for Novesky.  *See* AR 7.  On April 26, 2010, the Common Council passed the resolution.

*See* AR 11-12.  The resolution was forwarded to Mr. Lester by Alex Smith, Middletown's

Assistant Corporation Counsel, who requested a response.  AR 10-12.  Guertin's counsel also

forwarded the resolution and requested a response.  AR 6-8.  By letters dated February 19, 2011,

Yolanda Chávez, HUD's Deputy Assistant Secretary for Grant Programs, responded to Mr.

Smith and to Guertin's counsel, stating that HUD already had fully considered the points raised

and stood by its decision not to authorize reimbursement of Guertin's legal fees, for the reasons

articulated by Mr. Lester in his June 12, 2008 letter to Guertin's counsel and by Mr. Kovar in his

July 10, 2009 letter to Representative Hinchey.  AR 2, 4.

**G.     The Federal Court Action**

Guertin filed this action on July 6, 2011 pursuant to the Administrative Procedure Act,

5 U.S.C. § 701 *et seq*.  The complaint principally seeks a declaration that HUD's decision "is

arbitrary, capricious and without any rational basis and in violation of [Guertin]'s [constitutional]

rights to due process and equal protection,"[4] and "an order directing and enjoining HUD to authorize the City of Middletown to pay [Guertin] $65,967.76, plus interest, out of the HUD administrative funds being held by the City's Office of Economic and Community Development" as reimbursement for his defense costs.  Compl. at 12.

This Court held an initial conference on March 13, 2012, after which the parties discussed whether the matter could be consensually resolved or would proceed to motion practice.  By letter dated May 8, 2012, the parties requested that the Court approve a proposed briefing schedule for cross-motions for summary judgment.  Pursuant to that schedule, the Government filed its answer and the administrative record on May 31, 2012, and Guertin filed his opening brief on June 25, 2012 (the "Guertin Brief" or "Guertin Br.").

---

[4] As Guertin notes in his opening brief, *see* Guertin Br. at 1 n.1, the Government understands that the complaint's allegations that HUD violated his equal protection rights were intended to have been raised under the Fifth Amendment, rather than the Fourteenth Amendment, *see* Compl. ¶ 24, and the Government consents to an appropriate amendment to the complaint, if the Court deems such amendment necessary.

**ARGUMENT**

**POINT I**

**HUD'S DETERMINATION THAT CIRCULAR A-87'S COST PRINCIPLES
DO NOT AUTHORIZE MIDDLETOWN TO USE CDBG FUNDS
TO REIMBURSE GUERTIN'S LEGAL EXPENSES
IS CORRECT AND ENTITLED TO DEFERENCE**

As noted, HUD's determination that Middletown's reimbursement of Guertin's defense costs from CDBG funds would be unauthorized is based on HUD's interpretation of the cost principles contained in Circular A-87.  AR 25-27.  Circular A-87 provides, in relevant part:

10. Defense and prosecution of criminal and civil proceedings, and claims.

. . . .

b.  Legal expenses *required in the administration of Federal programs* are allowable.  Legal expenses for prosecution of claims against the Federal Government are unallowable.

Circular A-87, attachment B, section 10.b (revised May 10, 2004) (emphasis added) (codified at 24 C.F.R. pt. 225 app'x B).  HUD adopted these cost principles by incorporating Circular A-87 by reference in its CDBG regulations.  *See* 24 C.F.R. § 570.200(a)(5).  Circular A-87 thus has the force of a regulation.  *State of New York v. Shalala*, 959 F. Supp. 614, 617 (S.D.N.Y. 1997) (noting that Circular A-87 "has the force of a regulation" where it was incorporated by reference in HHS regulations), *aff'd*, 143 F.3d 119 (2d Cir. 1998).[5]

As Mr. Lester explained in his June 12, 2008 letter, HUD has interpreted section 10.b to require, "among other things," that "the legal expenses . . . result from the city's administration of the CDBG program and [that] the legal proceedings . . . result from actions taken in the

---

[5] Although Guertin has not raised the issue, there appears to be no question that Circular A-87 was properly incorporated into the HUD regulations.  *See* 49 Fed. Reg. 43852-01, 43874 (Oct. 31, 1984) (proposing adoption of 24 C.F.R. § 570.200(a)(5)); 53 Fed. Reg. 34416-01, 34440 (Sept. 6, 1988) (final rule); 53 Fed. Reg. 40220-01, 40221 (Oct. 14, 1988) (announcing effective date for final rule of October 6, 1988).

ordinary course of the employee's position."  AR 25.  Mr. Lester further explained in his June

12, 2008 letter that Guertin's legal expenses were not required in Middletown's administration of

the CDBG program, and thus did not satisfy the requirements of Circular A-87 for reimbursable

legal expenses, because Guertin was acting in his capacity as DeStefano's private lawyer.  AR

26.  As Mr. Lester noted, this conclusion is grounded in the criminal court's conclusions that

Guertin wore "'two hats'" and, "'in his zeal to represent his private client DeStefano, [had been]

blinded to his obligation to the City of Middletown,'" and that Guertin "'did his job as attorney

for a private citizen.'"  AR 26 (quoting AR 111-12).

      Mr. Lester's application of Circular A-87 is correct:  work performed in a private

capacity is not required in the course of administering a government program.  Moreover, in

concluding that Guertin had acted under a conflict of interest and to the benefit of his "private"

client DeStefano, AR 21, the criminal court provided the factual predicate for Mr. Lester to find

that Guertin's legal expenses were not required in the course of administering the CDBG

program.  In addition, the criminal court also provided the factual predicate for Mr. Lester to

distinguish Guertin's request for reimbursement with CDBG funds from that of Novesky, who

did not owe independent duties to DeStefano and was not found to have acted in his private

capacity for DeStefano's benefit.  AR 100.

      To the extent that there is any ambiguity in Circular A-87 with respect to whether

Guertin's legal expenses qualify as being "required in the administration" of the CDBG program,

HUD's interpretation of its own regulation is entitled "to controlling deference . . . unless it is

plainly erroneous or inconsistent with the regulations or there is any other reason to suspect that

the interpretation does not reflect the agency's fair and considered judgment on the matter in

question."  *Mullins v. City of New York*, 653 F.3d 104, 114 (2d Cir. 2011) (internal quotation

marks and alterations omitted); *see also Shalala*, 959 F. Supp. at 621 (noting that "agency's interpretation of its own regulations [(*i.e.*, Circular A-87)] is of controlling weight and entitled to great deference"). The Court's role in determining whether an agency's interpretation is "plainly erroneous or inconsistent" with the pertinent regulations is "limited." *Mullins*, 653 F.3d at 106 (internal quotation marks omitted). The Court may look to, among other things, whether the agency's interpretation is consistent with the agency's earlier determinations. *Id.* at 116. The Court "is without authority to substitute its own independent interpretation of an agency's regulations for that of the agency." *Id.* at 114.

HUD's decision with respect to Guertin is not plainly erroneous or inconsistent with Circular A-87. Although there are certain similarities between Novesky's circumstances and Guertin's case, HUD found the existence of an improper motivation, *i.e.*, a conflict of interest, which was found by the criminal court with respect to Guertin (as well as DeStefano), but *not* Novesky, to be distinguishing and determinative. AR 26. HUD reasonably relied on the criminal court's evaluation of the evidence and is not required to ignore the criminal court's findings with respect to whether Guertin acted under a conflict. Those findings are, at the very least, not unreasonable – as Guertin's counsel recognizes, "there may be differences of opinion as to whether Guertin had an ethical obligation to not represent [DeStefano] on any HUD loans that may have affected [DeStefano]'s interests." Guertin Br. at 7. It cannot be plainly erroneous for HUD, like the criminal court, to distinguish between Guertin and Novesky.

Moreover, HUD's application of Circular A-87 is consistent with other HUD interpretations of Circular A-87 that are part of the administrative record in this case. In 1995, HUD's Deputy Assistant Secretary for Grant Programs opined that CDBG funds could be used to defend a lawsuit against the City of Houston, Texas, "as long as the grantee has acted with due

diligence in the administration of the [CDBG] program." AR 161; *compare* AR 38 (Mr. Lester's

September 2007 letter to Mr. Hetzel) ("As a general matter, [HUD] has taken the position that a

recipient may use CDBG funds to pay reasonable legal expenses incurred in defense of lawsuits

resulting from its administration of the CDBG program *as long as the grantee has acted with due

diligence in the administration of the [CDBG] program.*" (emphasis added)). Similarly, a 1992

HUD memorandum referenced the agency's "longstanding policy" not to pay defense costs

where the entity "violated HUD's requirements or [wa]s otherwise at fault." AR 184. HUD

memoranda from 1984 and 1979 also note that a predecessor program to CDBG had permitted

reimbursement of litigation expenses under a prior version of the OMB cost principles "if they

were incurred as a result of good faith actions undertaken in the administration of the program."

AR 195; AR 216. These interpretations show that HUD's decision not to authorize

reimbursement of Guertin's defense costs is consistent with HUD's longstanding approach to

determining when to authorize payment of legal fees from grant funds, a factor further

supporting judicial deference here. *See Mullins*, 653 F.3d at 116.

## POINT II

### HUD'S APPLICATION OF CIRCULAR A-87
### IS NOT ARBITRARY AND CAPRICIOUS

Guertin mistakenly urges this Court to set aside HUD's denial of authorization to

reimburse him from CDBG funds on the ground that HUD's decision is "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency

decision may be deemed arbitrary and capricious only "if the agency has relied on factors which

Congress has not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Ind. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *accord Yale New Haven Hosp. v. Leavitt*, 470 F.3d 71, 79 (2d Cir. 2006). Review under the APA's "arbitrary and capricious" standard is "narrow and particularly deferential," requiring the agency to demonstrate only that it "has considered the evidence, examined the relevant factors, and spelled out a satisfactory rationale for its action including the demonstration of a reasoned connection between the facts it found and the choice it made." *Envtl. Def. v. U.S. E.P.A.*, 369 F.3d 193, 201 (2d Cir. 2004); *see also, e.g.*, *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989); *Int'l Fabricare Inst. v. EPA*, 972 F.2d 384, 389 (D.C. Cir. 1992) (stating that this "highly deferential standard of review 'presumes agency action to be valid'").

"In reviewing agency action, [a c]ourt may not 'substitute its judgment for that of the agency.'" *Natural Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  Reversal of the agency's decision is justified only where there has been a "clear error of judgment." *Overton Park*, 401 U.S. at 416.  Nevertheless, "within the prescribed narrow sphere, judicial inquiry must be searching and careful." *Islander East Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 151 (2d Cir. 2008) (internal quotation marks and citations omitted).   Only by "carefully reviewing the record and satisfying [itself] that the agency has made a reasoned decision" can the court "ensure that agency decisions are founded on a reasoned evaluation of the relevant factors." *Marsh*, 490 U.S. at 378 (internal quotation marks omitted).

HUD's decision with respect to Guertin, which must be presumed valid, is not arbitrary and capricious under the APA.  To begin with, the record reflects that HUD properly considered

the evidence and the relevant factors.  *Envtl. Def.*, 369 F.3d at 201.  Mr. Lester's June 12, 2008

letter shows that HUD examined the criminal court verdict, *see* AR 26, the indictment, *see* AR

25-26, Mr. Lester's September 2007 letter to Mr. Hetzel regarding reimbursement of Novesky,

*see* AR 25, and HUD regulations, including Circular A-87, *see* AR 25-26.  HUD received and

considered letters from counsel, the City of Middletown and the office of a member of the U.S.

House of Representatives.  *See* AR 6-8, 10-13, 18-21, 22-23, 29-32, 34-36.  HUD also examined

other decisions and opinions relating to payment of attorneys' fees.  *See* AR 151-159, 161-62,

168-71, 177-78, 180-82, 184, 195-204, 206-07, 209-13, 215-16.  There is no indication that HUD

failed to consider any relevant evidence or factor, or denied Guertin an opportunity to be heard.

        Nor can HUD's decision properly be characterized as not "founded on a reasoned

evaluation of the relevant factors."  *Marsh*, 490 U.S. at 378 (internal quotation marks omitted).

Rather, the record shows that HUD, after due consideration, reached its decision based on the

criminal court's conclusion that Guertin had acted under a conflict of interest, AR 111-12, and

that Novesky had not, AR 100.  The criminal court's conclusion is at the very least reasonable, as

Guertin acknowledges in his brief.  *See* Guertin Br. at 7.  And it was reasonable for HUD to base

its distinction between Guertin and Novesky on that conclusion, rather than the criminal court's

decision that both Guertin and Novesky were not guilty of the criminal charges.  As a general

matter, an acquittal in a criminal case does not preclude there being other consequences flowing

from the conduct at issue, such as civil liability.  *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, No.

02 Civ. 3288, 2003 WL 22953645, at *4 (S.D.N.Y. Dec. 16, 2003) (noting that even if defendant

were acquitted, he would still face civil liability).  And HUD is not required to interpret its

regulation governing reimbursement of legal expenses to ignore other judicial findings simply

because there has been an acquittal in a criminal case.  Instead, as noted, it has been HUD's

longstanding practice to look on a case-by-case basis to indicators of "due diligence," AR 38,

161, "fault," AR 184, or "good faith," AR 195, 217.  Under those standards, HUD's distinction

between Guertin and Novesky is not arbitrary or capricious.

Guertin asserts that HUD's decision-making process was arbitrary and capricious because

it failed to focus only on "two undisputed and undeniable facts," namely, that "'every single one

of the seven economic development loans question were properly granted and documented,'"

and that had Guertin not been "the City's attorney involved in the administration of those loans,

Guertin would not have been charged with the crimes set forth in the indictment."  Guertin Br. at

7.  As noted, the first of these assertions simply restates the criminal court's conclusion that the

original loan recipients were qualified and does not bear on the dispositive factor in HUD's

decision and the key issue in this case, namely, whether Guertin acted under a conflict of

interest.  AR 97-98.

While Guertin's second assertion is true, it is not determinative – the criminal action

alleged official misconduct with regard to CDBG loans, and thus the charges inherently involved

the administration of CDBG loans.  That is not the end of the inquiry, however.  As the criminal

verdict reflects, AR 111-12, the conduct that resulted in the charges against Guertin involved his

actions as Corporation Counsel *while under a conflict of interest*:  if Guertin, *in light of his duties

to his private client DeStefano*, had recused himself from his responsibilities as Corporation

Counsel, there would have been no apparent basis to charge him with the charges in the

indictment.[6]  HUD does not and is not required to construe section 10.b's inquiry as to whether

---

[6] Of the eight counts in the indictment that named Guertin, four specifically allege that he acted
under a "prohibited conflict of interest."  *See* Counts 37, 39, 40, 42.  The remaining counts
similarly focus on alleged actions that Guertin took on DeStefano's behalf.  Two concern an
alleged "unauthorized exercise" of Guertin's official functions, including on days when Guertin
was alleged to have drafted transaction documents benefiting DeStefano – again, a conflict with
Guertin's official obligations.  *See* Counts 38, 41; *see also* Count 55 (Overt Acts 2, 4).  And the

the legal defense costs of a state or local employee qualified as "required in the administration of [a] federal program[]" by looking only to whether the employee in question was accused of misconduct while administering the federal program.

Guertin similarly argues that HUD's decision is arbitrary and capricious because his indictment did not "arise from his 'advising the mayor' on the 'mayor's private business dealings,'" but rather "out of an unfounded suspicion that, because Guertin was the Mayor's personal attorney, he must have been willing to compromise his duties and obligations, as Corporation Counsel, in the administration of the CDBG program."  Guertin Br. at 6; *see also id.* at 7 ("[E]ven if the trial judge did say that Guertin 'did his job as attorney for a private citizen,' that is not what Guertin was indicted for.  He was indicted on the mistaken belief that he had done something wrong *as the attorney for the City* in the course of his administration of the City's CDBG program." (emphasis in original)).  This argument should similarly be rejected. The criminal court's conclusion that Guertin was not guilty of the criminal charges does not mean "that the indictment's allegations that, because Guertin was the Mayor's personal attorney, he must have been willing to compromise his duties and obligations, as Corporation Counsel, in the administration of the CDBG program" were "unfounded" or "mistaken" – rather, the criminal court found that Guertin had compromised his duties and obligations to Middletown by acting under a conflict of interest, but that the *mens rea* element required by New York law had not been proved.  AR 111-12.

---

remaining counts similarly concern fraudulent and/or unauthorized conduct to benefit DeStefano, whom Guertin represented in his private capacity.  *See* Counts 1, 55 ("Objective").

## POINT III

## HUD'S DECISION DOES NOT VIOLATE GUERTIN'S
## EQUAL PROTECTION RIGHTS BECAUSE HUD'S DECISION
## WAS NOT IRRATIONAL AND WHOLLY ARBITRARY

For the reasons articulated in Points I and II, Guertin cannot show that HUD's decision was "irrational and wholly arbitrary," as required for a "class of one" claim under the Equal Protection Clause of the Fifth Amendment. *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001). Guertin's alternative basis for relief thus also fails.[7]

## CONCLUSION

For the reasons set forth above, the Government's cross-motion for summary judgment should be granted and plaintiff's motion for summary judgment should be denied.

Dated: New York, New York
       July 23, 2012

                                    Respectfully submitted,


                                    PREET BHARARA
                                    United States Attorney

                              By:   s/ *Michael J. Byars*_____
                                    MICHAEL J. BYARS
                                    Assistant United States Attorney
                                    Telephone:  (212) 637-2793
                                    Facsimile:  (212) 637-2717
                                    Email:  michael.byars@usdoj.gov

---

[7] As Guertin has not moved for summary judgment regarding his assertion that HUD's decision violated his right to due process under the Fifth Amendment of the Constitution, the Government believes that this claim should be deemed abandoned. Moreover, the record reflects that HUD duly considered Guertin's request that it authorize reimbursement, *see* pages 19-20, *supra*, and his complaint alleges no facts supporting a contrary conclusion. Nor has Guertin pursued the assertion in his complaint that jurisdiction under the mandamus statute or civil rights conspiracy statute is proper. *See* Compl. ¶ 4. These assertions similarly should be deemed abandoned.

- 23 -